Let's hear Pereira versus 397 Realty. This is unfair, but even before you begin, can I ask you just whether there's anything at stake on this appeal other than costs and legal fees? Yes, Your Honor, that's correct. That's all? That's all. What's at stake would be the sanctions or the costs and legal fees, and we'd be entitled to under 362K1, correct. Right, okay. Thank you. May it please the Court. Your Honor, it's John Campo on behalf of the appellant and plaintiff below, John Pereira, as the trustee of the Heavey bankruptcy proceeding. Your Honor, if I may, just to really summarize where this case lies. Can you also please address the question that we ask you to be prepared for with regard to really the intersection between 362K and 362A? Yes, Your Honor. Would you like me to do that first, or do you want me to go forward with it? Yes, that would be great. Thank you. Very good. Well, Your Honor, reading with respect to the Court's order of April 29, this Court directed the parties to . . . You mean August 29. I'm sorry. I said . . . I apologize. August 29 to discuss how, if at all, this Court's analysis and disposition of this matter should be informed by the Court's prior interpretation of 362K1, which provides that, except in situations not applicable here, an individual who's been injured by any willful violation of the stay shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages. Here, Your Honor, the Court's prior interpretation of 362K1 is set forth in the Crisen and the Weber cases, the Crisen case of 1990 and the Weber case of 2013. And our position is that those cases should lead the Court to find that a willful violation did occur here, and the violation of the stay occurred as a result of the fact that, one, the defendant appellee knew of the bankruptcy stay in this case. This is unlike the Weber case where, when the act of taking possession of the automobile occurred, there was no automatic stay. Then the secured creditor then gets notice of the stay and then fails to return the automobile, and that's what led to the determination there with respect to, I think, a remand for determination as to whether or not there should be punitive damages. Here, Your Honors, the appellee knew of the stay and took an actual act, whether you call it whatever it is, it's the Inquiry Act or whatever you want to say, when it went to the clerk's office in New York State, and that Inquiry Act was a violation of the stay because it... I want to go and I want to look at the docket in this case. Okay. And in the course of that, and that's all they said, and in the course of that the clerk of court looks at it and says, oh my gosh, we forgot to file this. A violation? Well, yes, Your Honor, the act... Because he went to look at the docket? The act is the act that creates the lien, and the act that creates the lien is going to the clerk's office. Say there was just some mnemonic, you know, tie a ring around your finger or something like that, you know, and all of a sudden, you know, the bell goes off and the clerk says, oh my God, I forgot to file this thing. Well, Your Honor, that's not what happened here. I don't know. But, you know, that is the moot court answer that doesn't help me very much. That's right. I understand. I am trying to figure out what the range is here. And now you're telling me that if I just go to look at the docket and the clerk looks at the docket at the same time as I do and says, oh my gosh, I forgot to file it and files it. Okay. That may not be a violation or it may not be a willful violation, okay? All right. But calling up and saying what happened? Well, that's not what happened. What happened is is that they were sued, and then they went to the clerk's office and said what happened. And then miraculously days later, the judgment appears of record on the docket where it should have been entered to initially extend the perfection of the judgment. Let's take just following up on Judge Hall's line of questioning. Let's say that the creditor's counsel was visiting the clerk's office on another case, totally different case, and the mere presence of the counsel leads the clerk to realize that he was not there.  And so that's the case that we're concerned about. Okay. What's the result there? The result is is that the lien is still invalid as a result of the fact that it occurred in violation of the automatic state. Who violated the state in that circumstance, Your Honor? I can't honestly say. But we know a state violation occurred. It's not going to change the end result of the case. The only issue will be whether or not the court determines, which the lower court is prepared to do, is to determine because she split the issue and she was going to have the hearing on the issue of the cost and expenses, is whether or not that act as it took place could be considered willful or not. And therefore, a deliberate act to create a lien. Now, you don't have to show an intent. And that's very clear. And this court has said that on several occasions. The Weber case and the Christian case. That's the Weber case, the Christian case, and as well, Your Honor. You don't have to show specific intent. Pardon, Your Honor? You don't have to show specific intent is what we've said. In the law context. Correct. You don't have to say I went out to violate the statute. You have to show that you intended to do the act. That's correct. And it's the intent to do the act, and the intent to do the act in this case. What act was intended here? The intent was to make inquiry as to why there was no judgment lien of record. And when you went out and inquired why isn't there a judgment lien, and the judgment lien is created after that act. Let's say some law students out there doing research on, you know, the screw-ups and filings of judgment liens. And ask the clerk, just coincidentally in connection, why isn't there a judgment, why isn't the extension filed? Did the law clerk, did the law student who's writing an article for somebody violate the automatic stay? No, because that law clerk didn't know of the automatic stay. The defendant appellee here knew of the automatic stay. And went to the clerk's office with knowledge of the stay and with knowledge of the bankruptcy. And that's the distinction. When God decided to act to create the heavens and the earth, it may have all been an accident then. He didn't have to want to create it. He just had to do something which resulted in the creation, something that had he thought about it, he wouldn't know. The whole question is, what is to create me? Well, Your Honor, I think that the court has succinctly stated that in the prior decisions. And if I may, in Parmetos, the court interpreted the term act and that said an act for purposes of 362 need not even be an act at all. It can be triggered without any action by the lien holder. And this authority was . . . It has to be deliberate, doesn't it? Well, when you say deliberate, I mean, if it's an act, Your Honor, that happens not by virtue of any step taken by the defendant appellee in this case, no, that wouldn't be a stay. For example, under Judge Hall's, Justice Hall's question . . . Judge, not there yet. Okay, Judge Hall's. Yeah. Under your inquiry about whether or not the student who's doing the . . . Research. The research goes to the clerk and wants to find out why judgments haven't been entered and how often does it happen. That isn't an act that is taken . . . That act, okay, was a violation, but it's not a knowing violation of the stay because they didn't know of the stay. But whatever transfers . . . In a former life, I used to work for an insurance company that provided malpractice defense and blowing a lien or a lien continuation is a pretty sure way to get yourself sued if there's a lot of money at stake, right? That's correct. I agree on that. Immediately the company sends me in to say, do what you can to clean this up ASAP so that we're not too much on the hook to the person who holds the lien, right? Okay. So I, as counsel to the lawyer who has screwed up ostensibly, call the clerk, but it all happens very quickly because he says, oh my God, I think something's wrong or we blew this or there's a bankruptcy now. And I ask the clerk, as counsel to counsel, knowing that there's an automatic stay, knowing that there might be something . . . And I say, what the heck happened? I'm just doing a fact-finding mission. And the clerk records it. Have I violated the automatic stay? Your Honor, I'd have to say I'm not certain because, again, you weren't going out. Was your intent to have the lien created again? If it were, then you did. I'm on a fact-finding mission, but what I do, knowing that there's an automatic stay . . . I'm getting you around the law student problem that you pointed out. Knowing that there's an automatic stay, I ask the question of the clerk, and the clerk immediately files it. So you ask, but you're acting on behalf of the carrier who could have potential liability. Absolutely. Okay. And your act, as I see it, still leads to the creation of the lien, if indeed the lien is deemed created and somehow was . . . Right. Makes it around the corner or whatever. Yeah. And somehow it became retroactive, which it didn't in this case. Okay. But I think that the act of inquiry that leads to the perfection of the stay, was it willful? I don't know. I would take that for the practicing bar out there, all the transactional folks. What rule do we articulate? Well, I think the rule that you have to articulate is if you know about a bankruptcy, then you know there's an automatic stay. And the rule is, it's very simple. If you think you want to go out and try to perfect your lien, go ask the court for relief from the stay. It's a very simple mechanism that exists. On the one hand, the number of times that in panels that I have been on, we've had to inquire whether there's a stay in effect, whether the appeal is going to go forward, those various things. We know it's so-called automatic. It doesn't necessarily mean that people are acting on it or aware of it or anything else. Well, here's the issue. When you make the inquiry to the clerk, you know that the act . . . If you know that there's an automatic stay and you make the inquiry and say, what the heck happened? And the clerk says, oh my God. At that point, you know there's been a stay violation. Now, the district court appear to seem to accept the version of the events of your adversary, so Special Appendix 3. If the trustee has not challenged 397 Realty's description of the facts as constituting a mere inquiry to the county clerk, not a request for action, was that not the case? Well, not actually, Your Honor, because the issue never came up. The issue with respect to what the inquiry was didn't matter. As a matter of law, the court found that as a hypothetical judgment lien creditor, the trustee had the right to void that lien, and the issue . . . That's something the court left open. So you disagree that you accepted the appellee's versions of . . . Well, I mean, the appellee's version was, I made an inquiry, but there was never any further . . . there was nothing . . . there's nothing in the record with respect to that, and one would expect that the time for that determination to be made would be when the court was going to determine whether or not it was willful or malicious, and thus you would have an action for punitive damages, which there's been no determination with respect to that. As a matter of self-defense, actually, about five or ten minutes ago, I referred to . . . I asked whether it was a deliberate act, and you said, what do you mean by deliberate? And I wanted to point out that I was quoting from Cricen when you said deliberate act. Oh, okay. Well, I . . . I'm just cleaning up the record. No, I appreciate that, Your Honors, and obviously what this court did in Cricen, it found that there was nothing that was malicious or that warranted the finding of punitive damages. But there are actual damages. There are actual damages, and those actual damages under the statute, Your Honor, which the court asked the parties to look at specifically, specifically state that there shall be actual damages. It's not a question of may. It's not even . . . if the court determines that there has been . . . and if I may, I'm going to go back to effectively cite to . . . going to the Cricen decision at page 11, the court says, any deliberate act, and this is where the court says this is first impression for this court, because other courts had gone through. In fact, in Cricen, the question was under 362H because that's where the section, where that provision sat then. It now is under 363K. Any deliberate act taken in violation of a stay, which the violator knows to be in existence. So there's no dispute that the alleged violator here knew about the automatic stay. The deliberate act that they took was the act to go down to the clerk's office even if it was a simple inquiry. What happened here? That's an act, and that happens with knowledge of the existence of the stay. The question is whether that act was in violation of the stay. Whether going and asking the question, just using the words there, whether or not they apply. Well, Your Honor, I guess I would say this. I don't think what Justice Judge Kogan did below could be correct, because what Judge Kogan said is, well, if there was a violation of the stay, it occurred by the clerk. The clerk didn't know about the stay. The only party who knew about the stay was the party making the inquiry of the clerk. And here. The party making the inquiry didn't ask for anything to happen. Well, we don't know. There's no, the record is not complete with respect to whether they did or didn't ask for anything to happen, but even if they didn't. You made that objection? Huh? You made that objection? That issue, Your Honor, is for the court in connection with determining whether or not there would be punitive damages, I believe. But even if there wasn't anything more than the inquiry, what happened, I know there's a bankruptcy. I know my lien is not of record. I know it because I've been sued. This is not a function of you acting as counsel for the carrier and just saying, hey, I just want to know what happened here. You know, I want to see where we are, blah, blah, blah. That's not what happened. Because I know my client is going to be sued. Well, but here you know your client has been sued, Your Honor. They went to that clerk's office after the lawsuit. And the suit clearly states that on the date that was last inspected, in June of 14, there was no. And they're not allowed to go in and find out whether that's accurate or not. Well, I think you can go in and find out whether it's accurate, but that's as simple. You don't have to contact the clerk to do that. All you have to do is go to the record, to the judgment record, and look and say, is this judgment on the record? And if it's not on the record. You're asking us basically to write a manual when we hand down a decision here, if we agree with you. Well, I'm not asking. This is what you can do. This is what you can't do. Counsel, beware. Well, I think, Your Honor, it gets a little bit simpler than that because I think that the manual has already been written. It's the bankruptcy code. And the manual has been written. It says 362, which says, which specifically discusses acts to create liens in violation of a stay. I think that the issue is very simple. Prudent lawyers should know there's a bankruptcy case. Hey, if I'm going to go down to the clerk's office and that results in something, maybe I should go to the court and say, I'm going to make this inquiry or, I mean, they didn't, all they had to do to make the inquiry was simply go and read. They didn't have to go and say anything beyond that. They didn't have to say, why isn't my judgment recorded? Is there anything in the record that indicates what the nature of the damage, how much the damages are or approximates them? No, Your Honor. It would be the additional legal fees and costs in connection with prosecuting the adversary, amending it, having to file now an action that not only sought to simply impose the statutory 544 rights of the hypothetical lien creditor, which the estate had or the trustee had. We now had to seek, add an adversary complaint or cause of action for violation of the state and add an action for the unauthorized post-petition act of going down and having the lien created. It made the case more difficult and more expensive for the estate. Thank you. Thank you. Good morning, General. David Singer. I feel like I was a . . . Could you also address the question that we asked? Yes. I intend to address . . . I felt like I was a deceased person having a eulogy said about me here because I was the one that actually made the inquiry. I think for the court to understand factually, which I think is very important, they have to understand the history of this case. And that is that in March of 2014, the judgment expired. But prior to the expiration of the judgment, we had brought motions to the statute. And in fact, in August of 2013, we had issued an execution to the sheriff. When the debtor filed a Chapter 11 at first, we got it dismissed. And then he filed a Chapter 7. I had submitted to Mr. Campo copies of the papers that had indicated they were filed with the Kings County Clerk's Office showing the extension of the statute of limitations for the sale of the property. It showed they were filed. It showed it was filed. It had a stamp saying Kings County filed on . . . Actually, it was filed on . . . That's enough for me. Okay. But it shows it was filed at least a year before the Chapter 7 was filed. So now he brings an adversary proceeding. Sorry. With respect to the 11, the 11 got tossed, and then was there a hiatus or did it immediately . . . The 11 was actually dismissed on December 9th, and he filed the 7 on December 9th. Okay. Thank you. So it was the same day. Then they start an adversary proceeding against my client. And in there they say that the docket was never filed with the Kings County Clerk's Office. Now, I knew I filed it. I sent him proof that it was filed. I sent him an email saying . . . The extension was never docketed with the Kings County Clerk's Office. That's not what he said in his adversary proceeding. He said that the creditor never filed it. I knew I filed it. I sent him proof it was filed. I had a stamp that says Kings County Clerk filed. So when he started the adversary proceeding, all I did was make an inquiry. What happened?  I didn't know whether I had a defense to his adversary proceeding. As far as I was concerned, first off . . . Remind me how the inquiry was made. Was it by telephone? No. What happened was I had not filed a proof of claim. If I didn't file the docket, I mean the order in Kings County, there was no point to the adversary proceeding because there was no docket and there was no proof of claim. So what was he bringing in the adversary proceeding? To eliminate what? He was eliminating the fact that I had said I had filed it. And he says I didn't file it. I had no idea about the docketing. It's just I knew I filed it. What did you do? How did you contact him? I went down to the clerk's office and I said, What happened? And I showed him the papers. He said, Sit here. I sat there. They ran around, scurried all over the place, opened file drawers. May I assume that this is somewhere in the record and you're not testifying because we'd probably have to put you under oath. Right. But I did indicate in the record that I went there and said, What happened? They told me to come back the next day. I came back the next day. I said, What happened? They said . . . That's all I want to know. Look at the record. That's all they said to me. Look at the record. I looked at the record and the record showed that it had been filed retroactively. I never asked them to do it. I never made an inquiry to do it. All I said was, What happened? So I could prepare a defense to the adversary proceeding and to see who I could make a claim against the county clerk's office. And we did sue the county clerk. And the case was dismissed on a statute of limitations basis because it had been over a year. In 40 years of practice, when I filed documents with the county clerk's office, I've never had a situation where it wasn't docketed. I mean, it's stamped. I have a receipt. The service brings it back saying, Here it is, stamped, because I always get a copy. That's how I have it. It's got a color of a stamp, so it's not a photocopy of a stamp. I had assumed for a year and a half that this thing had been filed. Let me ask you this, going to 362K. Yes. So we've got the case of Enri Weber. Right. And that case says that when interpreting 362K, which provides for damage awards when an automatic stay is violated, a creditor, and I'm quoting, violates Section 362 when it knows of the filing of the petition and hence the automatic stay and has the general intent simply to perform the act found to violate 362, but that, and I quote, no specific intent to violate Section 362 is necessary. That's the language of Weber. Right. So while the good faith of a creditor may prevent the imposition of damages, it is insufficient, and here I'm quoting again, to excuse the creditor from liability for actual damages. Why isn't that, why doesn't, how does that, why doesn't that sort of guide us in this dispute and require reversal? The cases were very, you know, reading them is very difficult to interpret, I have to admit, because in each and every one of these cases, the court has held that it's not necessary to have an intent to violate the automatic stay, and it appears that just the fact that the stay was violated leads to liability, and yet in each of these cases, including Weber, the court reached the conclusion that it was willful because they willfully held the cause, willfully didn't return the cause. So on one hand, the court has said, you don't have to show intent, and on the other hand, in each case, it said, but here's the willful part that shows that he. Was that a difference between actual and punitive damages analysis? Well, under 362, to show damages, and the court analyzed that, the district court analyzed that, that you have to show contempt, which has a different standard. 362K is supposedly now you don't have to show the standards of contempt, you just have to show some willfulness. Now, I don't understand willfulness. If I wake up in the morning and get out of bed, I willfully got out of bed. If I sneezed and fell out of bed, I'm still out of bed. But I didn't intend to get out of bed. I wanted to sleep another hour. So where does the willful come in on this? It has to have an intent. Congress put the word willful in there, and although the court has said you don't have to have a willful intent to violate 362, you have to have a willful intent to do the act that you did. Now, if the act that I did was to make a reasonable inquiry as to what happened so that I could prepare a defense and avoid a lawsuit for malpractice on the part of my client saying, what happened, and I say, I don't know, I'm not allowed to find out. That doesn't even make sense. I'm allowed to find out what happened. I never asked the county clerk to file anything. I never asked him to take an action. I never even spoke to the county clerk. I spoke to some assistant who sits behind a desk typing information into a computer. That's the highest level of a person I ever met in the whole system. Let's say that we were to say that the district court's view is correct on the automatic stay provision, that foreseeability or intent is required in order for an act to be in violation of the stay. There were no findings on this question of your intent or foreseeability of your action by the district court, really because its interpretation didn't require any, but the record seems to be really quite thin on these issues. Why shouldn't we just remand to the district court if we were to agree with its interpretation of the automatic stay provision? That's one of the issues that was bothering me in this case. There was never any evidentiary hearing as to what happened at the county clerk's office, other than my admission that I went there and made an inquiry. And to the extent that there would be any testimony, it would be exactly what I've said before this court. Just made an inquiry, found out what happened so I could prepare a defense. If- And you were told to come back. You didn't get an answer. I didn't get an answer. You didn't come back the next day and just shown the record. Right. And they didn't give me an answer either. They just said, go look at the record, counsel. That was it. No one told me what happened. No one said, oh, we screwed up. We did this. We did that. I just looked at the record and it was there. And then I called my adversary and said- Isn't the- They retroactively filed it. I didn't ask them to do it. Isn't it, wouldn't it be more appropriate to send it back to the district court for factual determinations? As to the question of your intent and whether the county clerk's perfection of the lien was a foreseeable result of your inquiry. We shouldn't be doing that, should we? It's one of the possibilities that Judge Lord never really held an inquest or a hearing as to what actually took place. I've never seen anyone have punitive damages assessed or anything without a hearing. Did anyone ask for a hearing either side on this issue? Not that I'm aware of. I didn't know the judge was going to find in this direction. A lot of things happened in this situation where we never knew what the decision was going to be until we had a decision. And the issue of the- I didn't even think the issue would come up because of the nature of my inquiry. And I admit it. I didn't ask him to do anything. Just made an inquiry. So I was quite candidly shocked at two things. One, that the court read into it an intent that- and actually read that you don't even need an intent. What the court said is just the fact that it was violated leads to the fact that you are subject to sanctions and ordered a hearing on the level of sanctions. And she's even said in court, that doesn't mean you're going to get legal fees and sanctions. We haven't made a determination yet as to why you did this. So the court actually didn't impose any sanctions or legal fees at this point in time. All they did was say they were going to have an inquiry into it. And the second thing is, the decision, we never expected it to be so broad as to affect the co-owner of the property, which is now the subject of another matter that's pending before Judge Lord. Thank you. Thank you. Mr. Campo, you have two minutes. Just two minutes, Your Honor, and I'll try to even be brief. Do you dispute, as a matter of fact, do you dispute your adversary's recital of what happened here? I mean, or do you dispute it? Do you have any reason? We do have a reason to dispute it, and there was never an evidentiary hearing below. Did you ask for one? We did not ask for an evidentiary hearing. If that's the problem, why weren't you the one to ask for an evidentiary hearing? Well, Your Honor, because the court bifurcated it and itself said we'll have a hearing on whether or not on what the damages are. I mean, I didn't have to have a hearing to determine whether it was willful. And, Your Honor, For you, it doesn't matter. What is important for us, most important, is the precedent that Judge Kogan's decision sets, which says you have to have intent to violate the state. We know that's not the law. And the other thing he says This is all about legal fees. The notion of sending it back and having it come back here It shouldn't come back here. So that if he loses, he pays triple the amount he already owes is a little upsetting. The reality of it is that this is all a case in which the court said there's a violation of the state, and I will hold in a separate hearing a hearing with respect to the issue of sanctions or damages. That is the way the case went. There was, and then there was, and the fact, and then the district court takes it and really misconstrues 362 and really goes through this agonizing, painstaking analysis to try to say that you have to have intent or feasibility. Those are not provisions of the code. And if we want to stick to strict statutory interpretation, there's nothing in it that suggests it. And the decisions of this court are consistent with that. With respect to your own, the issue of whether or not there was willfulness here, whether or not there was maliciousness hasn't been determined. The reality of it is if the courts wanted to do anything, it would be to reverse the finding that there was no violation. That's wrong. Reverse Judge Kogan and say in your decision, remand it back to the bankruptcy court for a determination of whether or not the violation in this case was willful enough to warrant this court awarding either the actual damages or punitive damages that could be sought. Why couldn't there be no violation if all there was was a question by a person who did not ask for anything to be done? Well, we don't know that they... Let me finish my question. Sorry, Your Honor. Who had no intent to have anything done. He just was making an inquiry. And the violation, if any, was by the clerk or the deputy or whoever, put it on the docket, nunk-pro-tunk, retroactively, who had no idea that there was an automatic stay out there. Now, that is a violation. It is a violation, but it is not by anybody who knows about the automatic stay. May I? Yes, please. Thank you, and I apologize, Your Honor, I did not... No, no problem. I'm not sure, Your Honor, that that... I would agree with you 100% it's a violation. Is it a violation of someone who didn't know about the automatic stay? We don't know that. We don't know precisely what counsel told the clerk. But I know that he says facts today, which are new, that he said that he said what happened, and they said, come back tomorrow, come back tomorrow, go look at the docket. There's a disconnect. If I go down and ask what happened, they're going to say, never got recorded. What else do you want to know? Well... Not come back tomorrow and here it is on the docket. With all due respect, and I come from a different state, but there are plenty of public servants, certainly, around who may be doing a little covering and say, well, let's check into that, come back tomorrow, and then all of a sudden things appear. We're not... And, Your Honor, that's possible. We find it... Possible? I would say in today's meal here it might even be probable, but maybe we need to go back, as Judge Katzman suggested, or at least was asking about, for an evidentiary hearing. I'm sorry, go back? For an evidentiary hearing to determine, under all the circumstances subject later to review, whether that even constitutes a violation, what occurred. Because if somebody didn't have knowledge who did the act, it's not a violation, right? You'll agree with me on that? That's what the statute says. Yes, I agree with you on that. Correct. So the clerk, assuming the clerk had no knowledge, the clerk didn't violate it. Right. Assuming that all it was was what happened, query whether that's a violation. Maybe we've even got First Amendment problems. I think, Your Honor, the issue, I agree with you, that there certainly would need to be further evidence with respect to what transpired. And I think that was always intended with respect to what Judge Lord did when Judge Lord said, I'll hear the issue. Now, the judge said there was a stay violation. I don't think there's a question that there was a stay violation. Somebody violated the stay. I mean, even Judge Kogan said, well... Well, something happened that violated the stay. Correct. There was an act that occurred, and that act is a stay violation. And that's important for the precedent of what 362 says. You can't be... I'm not suggesting that that couldn't happen. We couldn't craft something that says, yep, there was an automatic stay violation. It occurred. It's a stay violation, period. You can't do this. Acts to do this are violations of the stay. And if the court was determined that nobody's responsible for it, then there would be no award of damages. Thank you. Thank you, Your Honor. Thank you both for your arguments. The Court will reserve decision.